UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆
**ADVANSTAR COMMUNICATIONS INC.,**
**a New York corporation,**

                                   **Plaintiff,**

                        -v-                                          1:05-CV-1291

**DIRT MOTOSPORTS, INC., a Delaware Corporation**
**f/k/a BOUNDLESS MOTOR SPORTS RACING, INC.,**

                                  **Defendant.**
◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆

APPEARANCES:                                     OF COUNSEL

Nixon, Peabody LLP                        Andrew C. Rose, Esq.
Omni Plaza, Suite 900
30 South Pearl Street
Albany, New York 12207
and
Nixon, Peabody LLP                        Jason C. Kravitz, Esq.
100 Summer Street                          Gina M. McCreadie, Esq.
Boston, Massachusetts 02110          Michael R. Scott, Esq.
Attorneys for Plaintiff

Holme, Roberts & Owen LLP          Donald L. Samuels, Esq.
1700 Lincoln Street
Suite 4100
Denver, Colorado 80203
and
Holme, Roberts & Owen LLP          Jill J. Chalmers, Esq.
90 South Cascade Avenue, Suite 1300
Colorado Springs, Colorado 80903
and
Whiteman, Osterman & Hanna LLP    Margaret J. Gillis, Esq.
One Commerce Plaza, Suite 1900      John J. Henry, Esq.
Albany, New York 12260
Attorneys for Defendant

**Hon. Norman A. Mordue, Chief U.S. District Judge**

## MEMORANDUM-DECISION AND ORDER

### INTRODUCTION

    In this Lanham Act case, 15 U.S.C. § 1051 *et seq*., plaintiff seeks judgment declaring that

defendant has no valid and/or enforceable rights in the mark Dirt Motorsports, or, in the alternative, that plaintiff's use of the marks Dirtsports, Dirtsports the Voice of Off-Road Motorsports, and Dirtsports Expo Live does not infringe any valid and enforceable trademark rights owned by defendant.  In its answer (Dkt. No. 12), defendant interposes counterclaims seeking injunctive relief and a declaration that plaintiff has no valid and/or enforceable rights to use the marks Dirtsports, Dirtsports the Voice of Off-Road Motorsports, and Dirtsports Expo Live.

Plaintiff moves (Dkt. No. 17) for an order dismissing defendant's trade dress infringement counterclaim (third counterclaim) on the ground that it fails to state a cognizable claim, Fed. R. Civ. P. 12(b)(6); or, in the alternative, an order compelling defendant to articulate a more definite statement of its third counterclaim, Fed. R. Civ. P. 12(e); and an order compelling defendant to plead its fourth counterclaim for false advertising with particularity.  Fed. R. Civ. P. 9(b).

## DISCUSSION

**Third Counterclaim**

Defendant's third counterclaim is for trade dress infringement under Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).[1]  Section 1125(a)(1)(A) provides a cause of action

---

[1] Section 43 (a)(1)(A) and(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A) and (B), provide:

(a) Civil action
    (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which -
        (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
        (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's

to anyone injured or likely to be injured by another's use of "any word, term, name, symbol, or device, or any combination thereof ... which ... is likely to cause confusion ... as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities[.]" This protection extends both to trademarks and trade dress. *See generally Forschner Group, Inc. v. Arrow Trading Co., Inc.*, 124 F.3d 402, 407 (2d Cir. 1997). A trademark is a symbol made up of one or more elements such as name, font, color, and graphic, *see, e.g., Louis Vuitton Malletier v. Dooney & Bourke, Inc*., 454 F.3d 108, 115-16 (2d Cir. 2006), whereas trade dress is the "design or packaging of a product." *TrafFix Devices, Inc. v. Mktg. Displays, Inc*., 532 U.S. 23, 28 (2001). As explained by the Second Circuit:

> At one time, "trade dress" referred only to the manner in which a product was "dressed up" to go to market with a label, package, display card, and similar packaging elements. However, "trade dress" has taken on a more expansive meaning and includes the design and appearance of the product as well as that of the container and all elements making up the total visual image by which the product is presented to customers. Thus, trade dress is "essentially [a product's] total image and overall appearance" ... "as defined by its overall composition and design, including size, shape, color, texture, and graphics."

*Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc*., 58 F.3d 27, 31 (2d Cir. 1995) (citations omitted); *accord, Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 209-10 (2000).

In his treatise on trademarks and unfair competition, Professor J. Thomas McCarthy compares trademark and trade dress protection as follows:

> The emphasis and thrust of a claim of trademark infringement is in deciding whether a discrete symbol, such as a word, number or picture in fact functions as a mark and whether defendant's mark is likely to cause confusion. On the other hand, trade dress protection is generally focused more broadly. To determine trade dress infringement, if the plaintiff has defined the trade dress as the total image or overall impression of plaintiff's product, package and advertising, then it is this composite that is compared with the corresponding image or impression of defendant's product. If defendant's trade dress is

---

goods, services, or commercial activities,
shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

-3-

> likely to cause confusion with plaintiff's trade dress, then a finding of unfair competition is warranted. The ultimate protection desired—prevention of a likelihood of confusion of buyers—is just as important when a junior user presents a package which in toto is confusingly similar to plaintiff's, as when a mere part of the package (such as a word mark) is simulated.

1 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, § 8.1 (4th ed. 2006) (footnotes omitted).

> The third counterclaim alleges as follows:
>
> 79. DIRT has valid and enforceable trade dress rights in, among others, the distinctive design and color scheme it has used when displaying its DIRTVISION trademark and such distinctive design and color is not functional.
>
> 80. The distinctive design and color scheme used by DIRT in connection with its DIRTVISION mark has caused an association in the minds of motorsports aficionados with DIRT and DIRT's business operations, its auto racing and sports entertainment services, and its goods relating to off-road dirt track auto racing.
>
> 81. Upon information and belief, Advanstar has unlawfully imitated and otherwise created the DIRTSPORTS THE VOICE OF OFF-ROAD MOTORSPORTS and design which emulate, imitate, copy and appropriate the appearance, color, font, and design of DIRT's DIRTVISION trademark.
>
> 82. Advanstar adopted and has used its DIRTSPORTS THE VOICE OF OFF-ROAD MOTORSPORTS and design mark in commerce in connection with its off-road auto racing related goods and services, and the trade dress of Advanstar's DIRTSPORTS THE VOICE OF OFF-ROAD MOTORSPORTS design mark is confusingly similar to DIRT's DIRTVISION mark.
>
> 83. Advanstar's use of its confusingly similar trade dress is without consent or authorization of DIRT and such use constitutes a deliberate, intentional, knowing and willful (i) representation that its goods and services come from the same source as those bearing DIRT's DIRTVISION mark, and (ii) trade dress infringement under Section 43(a) of the Lanham Act; 15 U.S.C. § 1125.

Defendant claims that it has been and continues to be injured in interstate commerce by plaintiff's conduct. Defendant seeks injunctive relief.

In addressing plaintiff's motion to dismiss the third counterclaim under Fed. R. Civ. P. 12(b)(6), the Court accepts as true the factual allegations of that claim and draws all inferences in

favor of the defendant. *See Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1174 (2d Cir. 1993). Dismissal under Rule 12(b)(6) is proper only if it appears beyond doubt that defendant can prove no set of facts which would entitle it to relief. *See Valmonte v. Bane*, 18 F.3d 992, 998 (2d Cir. 1994).

As pleaded, the trade dress infringement claim in the third counterclaim appears to be indistinguishable from a trademark (or service mark[2]) infringement claim. Whether defendant is actually alleging trademark or service mark infringement, or infringement regarding the packaging, appearance, or design of some type of product, and if so, what that product might be, is not clear. It cannot, however, be said that it appears beyond doubt that defendant can prove no set of facts which would entitle it to relief on the third counterclaim. Whether or not defendant can make out a trade dress claim as distinguished from a trademark claim may well be determined on summary judgment after discovery. Dismissal under Rule 12(b)(6) is not warranted.

Plaintiff asks for alternative relief in the form of an order directing defendant to provide a more definite statement under Fed. R. Civ. P. 12(e).[3] Such a motion should not be granted "unless the complaint is so excessively vague and ambiguous as to be unintelligible and as to

---

[2] "A servicemark differs from a trademark only in that a servicemark identifies services rather than goods." *Murphy v. Provident Mut. Life Ins. Co. of Philadelphia*, 923 F.2d 923, 927 (2d Cir. 1990); *see* 15 U.S.C. § 1127 (defining the terms trademark and service mark).

[3] Fed. R. Civ. P. 12(e) provides:

> If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading. The motion shall point out the defects complained of and the details desired. If the motion is granted and the order of the court is not obeyed within 10 days after notice of the order or within such other time as the court may fix, the court may strike the pleading to which the motion was directed or make such order as it deems just.

-5-

prejudice the defendant seriously in attempting to answer it." *In re European Rail Pass Antitrust Litig.*, 166 F.Supp.2d 836, 844 (S.D.N.Y. 2001) (citation omitted). Under this standard, the third counterclaim is adequate as written. Relief under Rule 12(e) is denied.

**Fourth Counterclaim**

Defendant's fourth counterclaim is for false advertising. Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), provides a civil remedy for anyone believing he is, or is likely to be, damaged by false or misleading descriptions or representations of fact concerning the nature, characteristics, qualities, or geographic origin of goods in commerce. A false advertising claim may be based on the alleged wrongdoer's misrepresentations regarding either its own goods or those of a competitor. *See Societe des Hotels Meridien v. LaSalle Hotel Operating Partnership L.P.*, 380 F.3d 126, 132 (2d Cir. 2004). The falsity of a statement in a challenged advertisement "may be established by proving that (1) the advertising is literally false as a factual matter, or (2) although the advertisement is literally true, it is likely to deceive or confuse customers." *S.C. Johnson & Son, Inc. v. Clorox Co.*, 241 F.3d 232, 238 (2d Cir. 2001) (citation and quotation marks omitted).

In the case at bar, defendant avers in its fourth counterclaim:

88. Upon information and belief, Advanstar has represented in commercial advertisements or promotions used in interstate commerce that it would spend $150,000 in local television, radio and print advertising in marketing each of its six DIRTSPORTS EXPO LIVE off-road auto related expositions, specifically including the DIRTSPORTS EXPO LIVE expositions that Advanstar advertised that it would conduct in Phoenix, Arizona during October 22-23, 2005 and in Houston, Texas during November 12-13, 2005.

89. Upon information and belief, Advanstar cancelled its DIRTSPORTS EXPO LIVE off-road related expositions that were to occur in Phoenix, Arizona on October 22 and 23, 2005, and in Houston, Texas on October 12 and 13, 2005, and instead of its DIRTSPORT EXPO LIVE off-road related exposition that was to occur in Houston, Texas on November 12-13, 2005, it conducted a CYCLE WORLD INTERNATIONAL MOTORCYCLE SHOW.

>90. Upon information and belief, Advanstar's representations have misrepresented the nature and qualities of its DIRTSPORTS EXPO LIVE expositions since, upon information and belief, it does not, in fact, spend $150,000 in local television, radio and print advertising in marketing each of its six DIRTSPORTS EXPO LIVE off-road auto racing related expositions.
>
>91. Advanstar's misrepresentations of facts relating to its off-road related services were made using a confusingly similar trademark to DIRT's DIRT Marks.
>
>92. Upon information and belief, consumer confusion exists and will continue to exist as a result of Advanstar's use of confusingly similar trademarks to the DIRT Marks in connection with off-road auto racing related goods and services.
>
>93. DIRT has been, and is likely to continue to be, damaged by Advanstar's misrepresentations in that consumers who have relied upon Advanstar's promises to spend $150,000 on each of its six off-road auto racing expositions using the DIRTSPORTS EXPO LIVE mark and who have been damaged by such misrepresentation of fact are likely to believe that DIRT is the source of these misrepresentations or otherwise link these misrepresentations of fact to DIRT.

Defendant seeks injunctive relief.

Plaintiff argues that a Lanham Act false advertising claim essentially sounds in fraud and is thus subject to the heightened pleading requirement of Fed. R. Civ. P. 9(b).[4] However, scienter, an essential element of a fraud claim, *see, e.g., San Leandro Emergency Med. Plan v. Philip Morris Cos.*, 75 F.3d 801, 813 (2d Cir.1996), is not a necessary element of a false advertising claim under 15 U.S.C. § 1125(a)(1)(B). Thus, while it is arguable that a specific false advertising claim which includes all elements of a fraud claim would be subject to Rule 9(b)'s particularity requirement, *see, e.g., Volunteer Firemen's Ins. Servs., Inc. v. McNeil and Co., Inc.*, 221 F.R.D. 388, 393 (W.D.N.Y. 2004), there is no basis to require particularity of pleading in every claim of false advertising. *See, e.g., John P. Villano Inc. v. CBS, Inc.*, 176 F.R.D. 130, 131 (S.D.N.Y. 1997) ("[A] claim of false advertising under the Lanham Act ... is not identical to a claim of

---

[4] Fed. R. Civ. P. 9(b) provides: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally."

fraud. Fraud requires, not just the making of a statement known to be false, but also, *inter alia*, a specific intent to harm the victim and defraud him of his money or property.... By contrast, no fraudulent intent nor even a willful intent to trade on the owner's reputation or to cause dilution of the famous mark is required under 15 U.S.C. § 1125." (internal quote omitted)).

The fourth counterclaim in the case at bar is not essentially a claim of fraud. Particularity in pleading is not required.

## CONCLUSION

It is therefore

ORDERED that plaintiff's motion (Dkt. No. 17) is denied.

IT IS SO ORDERED.

September 25, 2006
Syracuse, New York

*/s/ Norman A. Mordue*
Norman A. Mordue
Chief United States District Court Judge